Filed 3/13/24  Marriage of Manning and Kim CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re the Marriage of JEREMIAH F. MANNING AND LUCY J. KIM | |
| JEREMIAH F. MANNING, Appellant, v. LUCY J. KIM, Respondent. | A164125 (San Mateo County Super. Ct. No. FAM0123613) |

Appellant Jeremiah F. Manning appeals from a post-judgment order denying an ex parte request to modify child-custody terms and awarding sanctions to respondent Lucy Kim.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This is the second appeal we have considered in connection with the parties' dissolution of their marriage.  As we noted in our first opinion (*Manning v. Kim* (April 10, 2019, A149875) [nonpub. opn.] (*Manning I*)), Manning is an attorney licensed to practice in New York, and Kim is a doctor. The two were married for around 12 years, and they have three children. They separated in November 2013, and dissolution proceedings were initiated

1

the following month. Manning has been unrepresented for most of the proceedings, including in this appeal. The trial court's final judgment was entered in September 2016, and it awarded the parties joint legal custody of the children, Kim sole physical custody, and Manning reasonable visitation and monthly child and spousal support. In *Manning I*, we considered and rejected Manning's challenge to the final judgment.

Post-judgment litigation continued. But appellant's appendix contains only four documents, providing little insight into the nature of those proceedings. The first is Manning's request for temporary emergency orders regarding child custody and other issues (an "ex parte" request) filed on March 15, 2021,[1] two days before a regularly scheduled noticed hearing. According to Manning's declaration supporting the ex parte request, the parties' three kids were "in immediate crisis" because of Kim's "bullying of [their] sons" and her "vituperative and continuous campaign of disparaging comments targeting" Manning, which had led him to not see his oldest child in more than a year. Manning asked that if the trial court was not willing to grant his ex parte request to intervene to address Kim's alleged "parental alienation," that the court hold "an immediate long cause hearing to be set on this issue so that fact witnesses and expert testimony may be heard and this situation may be remedied."

The record does not include any response filed by Kim. The second and third documents Manning includes in the record are two declarations he filed in May, one of which was a "reply." A hearing was held on Manning's request on June 4. The record contains a reporter's transcript of the hearing as well as of various other hearings.

---

[1] All further unspecified date references are to the 2021 calendar year.

The fourth and final document included in the record is the August 20 order denying Manning's request and ordering to him to pay $5,000 in sanctions to Kim for his misuse of the ex parte process. The court's order indicates that the parties agreed to the appointment of a "reconnection therapist."

## II.
### DISCUSSION

As was the case in *Manning I*, our ability to fully evaluate the appellate issues is limited because we lack a complete record and because Kim declined to file a respondent's appendix or brief. When we issued a tentative opinion in this matter on January 30, 2024, we noted that Manning's appendix lacked even the required register of actions (Cal. Rules of Court, rules 8.122(b)(1)(F), 8.124(b)(1)(A)). More than a month later, and one court day before scheduled oral argument, Manning filed a motion to augment the record with the register of actions, which spans 285 pages and lists every event in the action from November 2013 to future scheduled actions in summer 2024. Although we shall grant the untimely motion to augment, it does not ultimately assist Manning in carrying his burden of demonstrating prejudicial error. (See *In re Marriage of Kushesh & Kushesh-Kaviani* (2018) 27 Cal.App.5th 449, 435, fn. 5.)

### A. *Manning Was Not Entitled to Present Live Testimony on His Ex Parte Request.*

The trial court concluded that there was "no evidence" that Kim "ha[d] engaged in any behavior to alienate the children from" Manning. Manning does not directly challenge this conclusion and instead argues he was prejudiced because the trial court denied him the ability to present live

3

testimony to prove Kim was improperly alienating the children from him. He has not carried his appellate burden of demonstrating prejudicial error.[2]

To begin with, Manning's argument contravenes the rules applicable to ex parte requests, also known as applications for emergency orders. (Cal. Rules of Court, rule 5.151(a) (rule 5.151).) "Various court rules govern ex parte proceedings, which are designed to afford relief on an essentially emergency basis. 'A court will not grant ex parte relief "in any but the plainest and most certain of cases." ' " (*Newsom v. Superior Court* (2020) 51 Cal.App.5th 1093, 1097.) "The purpose of [an ex parte request] is to address matters that cannot be heard on the court's regular calendar." (Rule 5.151(b).) A declaration must be submitted with the request, and it "must contain facts within the personal knowledge of the declarant that demonstrate why the matter is appropriately handled as an emergency hearing, as opposed to being on the court's regular hearing calendar." (Rule 5.151(d)(2).)

The local rules for the San Mateo Superior Court applicable to family court proceedings state, "Ex parte applications are strongly disfavored. Orders will be issued thereon only upon a substantial showing of need. *The court's policy is to decide ex parte applications solely based upon the affidavits/declarations* submitted in favor of, or in opposition to, the applications." (Super. Ct. San Mateo County, Local Rules, rule 5.6(A), italics added.) These rules defeat Manning's appellate argument. Having made the choice to ask for emergency ex parte relief, Manning cannot complain that he

---

[2] In light of our decision affirming the August 20 order, we decline Manning's entreaty for us to vacate the order and then proceed to rule on the retroactive effect of Senate Bill No. 331 (2023–2024 Reg. Sess., Stats 2023, ch. 865, §§ 1–5), which imposes new restrictions on courts' ability to order certain family reunification treatments.

was bound by the rules applicable to such a request, which do not contemplate the presentation of live witnesses.

In addition, Manning cannot otherwise demonstrate error or prejudice. The record indicates that at the June 4 hearing he had not identified an actual witness, let alone one who was available and ready to testify. What Manning sought at the hearing was not the ability to present a live witness, but instead to proceed with a future "long-cause hearing so that [he could] retain an expert" to address the harm caused by one parent alienating children from the other parent. Manning cites to Family Code, section 217, subdivision (a), which generally directs that courts "shall receive any live, competent testimony that is relevant." But he presents no authority for the notion that the trial court here was required to transform his ex parte request into a motion to be heard at a later date on the court's regular calendar so he could call an unidentified witness to testify.

The cases Manning relies on are inapposite. Our Supreme Court in *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 invalidated a local rule that *marital dissolution trials* presumptively be decided on written declaration without live testimony. (*Id.* at pp. 1344–1345.) And *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 837 held that Family Code, section 217 precludes reliance on hearsay declarations over a party's objection where a party has no opportunity to cross-examine the declarant. Neither case held that a trial court is required to hear live testimony in ex parte proceedings.

Moreover, Manning fails to explain how his inability to have a live witness testify was prejudicial, particularly in light of the trial court's eventual finding that there was "no evidence that [Kim] has engaged in any behavior to alienate the children from [Manning]." An expert's opinion on the effects of alienation is manifestly immaterial when a court has found that

5

there was no such alienation.  Thus, for several reasons, Manning has not sustained his burden of demonstrating that the trial court abused its discretion by not allowing him to present live witness testimony.

### B. *Manning Has Not Demonstrated an Abuse of Discretion in the Sanctions Award.*

Manning's next argument—that the trial court wrongly imposed sanctions against him under Family Code Section 271 (section 271)—fares no better.  Section 271 is "designed to punish 'a party [who] has unreasonably increased the cost of litigation.' " (*In re Marriage of Blake & Langer* (2022) 85 Cal.App.5th 300, 310.)  "The section vests family law courts with an additional means with which to enforce this state's policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel.  'Thus, a party who individually, or by counsel, engages in conduct frustrating or obstructing the public policy is thereby exposed to liability for the adverse party's costs and attorney fees such conduct generates.' " (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1318.)

A sanctions award under section 271 is "reviewed for abuse of discretion.  [Citation.] . . .  [W]e will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225-1226.)  The appellant bears the burden of demonstrating an abuse of discretion (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16), and the trial court's order "is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

6

Manning has again failed to carry his appellate burden. At the June 4 hearing, the trial court stated, "there's a question of sanctions for filing all these ex partes . . . as opposed to just regular [requests for hearing]." The court asked Manning, "I want you to comment as to why the Court should not grant 271 sanctions against you to the respondent for your not abiding by local court rules and filing requests for ex partes for non-emergency matters." After Manning gave a non-responsive answer, the court awarded sanctions because Manning "fil[ed] numerous ex parte applications without good cause and without any emergency." It specifically found that Manning's March 15 ex parte request was "totally inappropriate and unnecessary given the noticed custody hearing scheduled two days later." This reference to a "noticed custody hearing" was apparently to a regularly calendared motion for a change of custody terms that occurred on March 17.

On this record, we can discern no abuse of discretion on the part of the trial court. While our record includes a transcript of the March 17 hearing, it does not include the pleadings filed in connection with it, nor does it include any of Manning's other ex parte requests.[3] Accordingly, we are unable to evaluate the trial court's finding that Manning abused the process with his "numerous" ex parte requests, and we must therefore consider Manning's argument forfeited. (See *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [when record is inadequate for meaningful review, appellant defaults and trial court's decision is affirmed].)

---

[3] The transcripts suggest that on May 21, 2021, another hearing on a different ex parte request was held. The record does not include the pleadings filed in connection with this hearing. According to Kim's attorney, the subject matter involved "pretty much the same issues" as the hearing on Manning's ex parte request that was scheduled for the June 4 hearing.

Manning also argues that the trial court wrongly failed to consider his income when it awarded sanctions to Kim. Again, we must consider the argument forfeited. For starters, Manning fails to provide a citation to the record showing that he raised and preserved his objection in the trial court. (See *People v. Partida* (2005) 37 Cal.4th 428, 435.) More importantly, the record is fatally incomplete, as it does not include copies of any of the pleadings or declarations filed in connection with the request for sanctions. We simply do not know what declarations or arguments may have been presented for the court's consideration.

At oral argument in this court, Manning seemed to believe that he could not be found to have provided an inadequate record since the trial court's register of actions was available on the court's website. And he further contended that the register he belatedly provided to the court demonstrates that he did not receive proper notice of the proposed sanctions—an issue he had mentioned in a single clause of his opening brief that did not include a citation to the record. Manning directed the court to other sanctions requests and claimed they were docketed in such a way to indicate that proper notice had been given, unlike the request here. Manning's conclusion is not self-evident from a review of the docket, especially in the absence of briefing supported by record citations. And what is still missing from the record is a copy of any written sanctions request and supporting documentation.

An appellate court "need not consider . . . a perfunctory assertion [in a brief] unaccompanied by supporting argument." (*People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8.) In short, the record is far too incomplete, and Manning's brief is far too undeveloped, for us to conclude that the trial court abused its discretion in awarding sanctions. We are similarly unpersuaded

by Manning's argument that he should not have been sanctioned for filing non-emergency ex parte motions, because Kim was allowed to file such a motion "over solely a money judgment."

## III.
### DISPOSITION

Manning's motion to augment the record filed on March 8, 2024, is granted. The trial court's August 20, 2021 order is affirmed.

_____

Humes, P. J.



WE CONCUR:




_____

Banke, J.




_____

Castro, J.*




      *Judge of the Superior Court of the County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


*Manning v. Kim*  A149875